UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRUCE BIEBER,
as Personal Representative of
the Estate of Abigail Bieber,

      Plaintiff,

v.                                    Case No. 8:26-cv-558-VMC-AAS

SHERIFF CHAD CHRONISTER,
in his official capacity
as Sheriff of Hillsborough
County, Florida,

      Defendant.
_____/

## ORDER

This matter is before the Court on consideration of Defendant Sheriff Chad Chronister's Motion to Dismiss (Doc. # 23), filed on April 6, 2026. Plaintiff Bruce Bieber responded on April 27, 2026. (Doc. # 30). Sheriff Chronister replied on May 4, 2026. (Doc. # 33). The Motion is granted in part and denied in part as set forth below, and the case is remanded to state court.

## I.   Background

Mr. Bieber is the father of Abigail Bieber, who worked as a deputy with the Hillsborough County Sheriff's Office ("HCSO"). (Doc. # 22 at 1-2, 13). On January 29, 2022, HCSO Detective Daniel Leyden, who was Abigail Bieber's boyfriend,

1

shot her to death before killing himself while on vacation in St. Augustine, Florida. (Id. at 16-17).

The Estate of Abigail Bieber was resolved through summary administration in 2022, with no personal representative being appointed. (Id. at 6-7). But Mr. Bieber alleges in the second amended complaint that he has "petitioned to reopen the probate proceedings for the Estate of Abigail Bieber and to convert the summary administration to a full administration under Chapter 733, Florida Statutes or open[] a new probate estate, so that a personal representative could be appointed with authority to prosecute this wrongful death action and the federal civil rights claims asserted herein." (Id. at 7-8). "The probate proceedings are pending in the Circuit Court for Pinellas County, Florida." (Id.).

Nevertheless, Mr. Bieber initiated this 42 U.S.C. § 1983, Florida Wrongful Death Act, and fraudulent concealment action in state court "as Personal Representative of the Estate of Abigail Bieber, on behalf of the estate and the decedent's survivors," against Sheriff Chronister on January 28, 2026. (Id. at 1, 13).

According to the second amended complaint, years "before he murdered Deputy Bieber, Detective Leyden exhibited a

2

pattern of violent, controlling, and threatening behavior toward intimate partners that was known or should have been known to HCSO leadership." (Id. at 16). In July 2016, Detective Leyden had a domestic altercation with his then-girlfriend Chynna Ratner, during which Detective Leyden screamed at her and "punched Ratner's car window hard enough that she feared it would break." (Id. at 18). Although HCSO officers appeared at the scene, no "internal affairs investigation was conducted," "[n]o follow-up interview with Ratner was performed," and "[n]o interview of [Detective] Leyden was conducted." (Id. at 19). "HCSO affirmatively designated the incident 'unfounded,'" which "created an official record stating that no misconduct had occurred, when HCSO possessed credible evidence to the contrary." (Id.). "HCSO then affirmatively excluded all evidence of the 2016 incident from [Detective] Leyden's personnel file," such that other individuals with the HCSO (like Abigail Bieber) "would find no record of his violent history" in Detective Leyden's file. (Id.).

Then, in February 2017, a woman named "Evita Flanning filed a complaint with HCSO Professional Standards alleging that [Detective] Leyden had screamed profanities in her face and pointed his finger at her in a threatening manner." (Id.

at 21). But "HCSO affirmatively dismissed Flanning by labeling her 'very emotionally unstable' and affirmatively closed the matter without even interviewing [Detective] Leyden." (Id.). There is no allegation that this incident was a domestic incident or that Ms. Flanning was a romantic partner of Detective Leyden's. (Id.).

The second amended complaint asserts that Detective Leyden's "history of domestic violence, stalking, and threats against prior intimate partners" "had been affirmatively suppressed by HCSO and excluded from [Detective] Leyden's personnel file." (Id. at 15). "As a fellow HCSO employee, Deputy Bieber reasonably relied on the agency's internal vetting and disciplinary processes to ensure that deputies and detectives with known violent propensities were identified and addressed." (Id.). "Deputy Bieber's decision to enter into a personal relationship with [Detective] Leyden was made in the context of HCSO's institutional endorsement of his fitness, an endorsement that was false and that HCSO knew to be false." (Id.).

Additionally, Mr. Bieber alleges that Deputy Bieber's murder was not an isolated incident: it "was the third murder-suicide involving an HCSO deputy as the killer in just five years." (Id. at 4). "These prior tragedies placed HCSO on

4

clear notice that domestic violence among its deputies posed a serious and lethal danger, yet HCSO failed to implement meaningful policies, training, or oversight." (Id. at 23).

In the Section 1983 claims, the second amended complaint alleges that "Deputy Bieber's death . . . was a foreseeable and direct result of HCSO's affirmative acts" and "HCSO's affirmative creation of a false record of clean conduct for [Detective] Leyden placed Deputy Bieber in greater danger than she would have faced had HCSO simply done nothing." (Id. at 39-40). Sheriff Chronister's "policies, customs, and practices were the moving force behind the constitutional violation that resulted in Deputy Bieber's death." (Id. at 44). "Alternatively, HCSO's failure to train its personnel to recognize and respond to domestic violence by fellow officers, despite the obvious need for such training given the pattern of murder-suicides . . . constitutes deliberate indifference that caused the violation." (Id.). As a result, Mr. Bieber "has suffered damages including, but not limited to, the death of Abigail Bieber." (Id.).

Sheriff Chronister now moves to dismiss, arguing among other things that Mr. Bieber lacks standing to assert the wrongful death and Section 1983 claims because he is not the personal representative of Abigail Bieber's estate, and that

the Section 1983 claims fail to state a claim against him. (Doc. # 23). After the Motion was filed but before responding, Mr. Bieber filed a notice of withdrawal of Count III, the Section 1983 state-created danger claim. (Doc. # 26). Now, Mr. Bieber has responded to the Motion (Doc. # 30), and Sheriff Chronister has replied. (Doc. # 33). The Motion is ripe for review.

## II.  **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true

6

a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## III. Analysis

### A.    Standing or Capacity

First, Sheriff Chronister moves to dismiss for lack of standing the wrongful death claim and the Section 1983 claims, which Mr. Bieber has brought only on behalf of Abigail Bieber. (Doc. # 23 at 8-9). It is undisputed that Mr. Bieber had not been appointed as the personal representative of the Estate of Abigail Bieber at the time he filed this action. (Id. at 8; Doc. # 22 at 6-8). It is also undisputed that only the decedent's personal representative can bring wrongful death and Section 1983 claims on her behalf. See Miller v. Cogoni, 302 F. App'x 898, 900 (11th Cir. 2008) ("Florida's Wrongful Death Act provides that actions are brought by the decedent's personal representative 'for the benefit of the decedent's survivors.'" (citing Fla. Stat. §§ 768.18 & 768.20)); Benson v. Benson, 533 So. 2d 889, 889-90 (Fla. 3d DCA 1988) ("We hold that the trial court correctly ruled that appellants,

7

decedent's parents, were without standing to bring a wrongful death action in Florida. Section 768.20, Florida Statutes (1985), directs that a wrongful death action must be brought by the personal representative. In this case, decedent's wife, not his parents, serves as 'administratrix' of the estate. As a result, the parents lack standing to sue, and the trial court lacked subject matter jurisdiction over the parents' claim.").

In response, Mr. Bieber notes that he has since been appointed by the probate court as the personal representative of the Estate of Abigail Bieber. (Doc. # 30 at 1). He provides copies of the order appointing him and the letters of administration. (Doc. # 30-1; Doc. # 30-2).

As an initial matter, there are conflicting Eleventh Circuit decisions about whether the issue before the Court is one of capacity or standing. Compare Glickstein v. Sun Bank/Miami, N.A., 922 F.2d 666, 670 (11th Cir. 1991) ("The question in this case is whether Howard Glickstein is able to bring this case on behalf of the estate. This is not a question of standing; rather, this issue involves the question of whether Glickstein has the capacity to bring this action on behalf of the estate. As Wright & Miller note, the doctrine of capacity is often incorrectly considered under

8

the rubric of a standing claim."), abrogated on other grounds by Saxton v. ACF Indus., Inc., 254 F.3d 959 (11th Cir. 2001), with Carringer v. Rodgers, 331 F.3d 844, 848-50 (11th Cir. 2003) (holding that "Carringer, as a parent, has standing to assert a § 1983 claim for the wrongful death of her son in violation of *his* constitutional rights" because "the Georgia Supreme Court [had] determined already that Carringer, as [the deceased's] parent, has standing to assert a claim for the wrongful death of her son under [Georgia law] because the spouse-murderer is precluded from recovery") and Moss v. Leesburg Reg'l Med. Ctr., No. 20-11376, 2021 WL 5175549, at *2 (11th Cir. Nov. 8, 2021) ("Nothing evidences that Plaintiff has been appointed as the personal representative of his mother's estate. Indeed, as a convicted felon, Plaintiff is ineligible to serve as a personal representative under Florida law. Because Plaintiff brought this civil action in his capacity as his mother's 'next of kin,' Plaintiff lacked standing to pursue his claims under section 1983, Bivens, and the FTCA." (citation omitted)).

Because Glickstein is the earlier case, the Court addresses the issue as one of capacity. See United States v. Howell, No. CR 20-0004-WS, 2021 WL 234270, at *1 (S.D. Ala. Jan. 22, 2021) ("Both this Court and any panel of the Eleventh

Circuit are precluded by the prior-panel-precedent rule from considering the defendant's argument. 'Under that rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc.*'" (quoting United States v. Sneed, 600 F.3d 1326, 1332 (11th Cir. 2010))). "Rule 17, Fed. R. Civ. P., governs the determination of whether an individual has the capacity to sue. In relevant part, the Rule provides that such capacity is determined by the state law of the forum where the Court is located, or in this case, Florida." Gubanova v. The Blackstone Grp. L.P., No. 12-22319-CIV, 2013 WL 12064500, at *2 (S.D. Fla. Feb. 25, 2013). Lack of capacity to assert an action in federal court is grounds for dismissal. See Id. ("[F]ailure to plead a plausible factual basis for the capacity to sue or be sued can serve as the basis for dismissing a complaint.").

Critically, however, "[c]apacity is not . . . jurisdictional." Nainani through Nainani v. United States, No. 1:20-cv-24402-LFL, 2022 WL 2198099, at *4 (S.D. Fla. Mar. 7, 2022). Thus, lack of capacity "is a defect that can be cured by a stay or amendment." Ungaro-Benages v. Dresdner Bank AG, 379 F.3d 1227, 1232 n.8 (11th Cir. 2004).

10

Because the issue is one of capacity and Mr. Bieber has now been appointed personal representative, Mr. Bieber has the capacity to bring this action. See Cunningham v. Fla. Dep't of Child. & Fams., 782 So. 2d 913, 916 (Fla. 1st DCA 2001) ("[W]hen letters of administration are granted, they relate back to the intestate's or testator's death. If a personal representative was improperly appointed, the subsequent appointment of a substituted personal representative relates back to the filing of the original wrongful death complaint, and the substituted personal representative is entitled to go forward with the action." (citations omitted)). The Court denies the Motion as to this issue.

**B.    Section 1983 State-Created Danger Claim**

Sheriff Chronister also moves to dismiss Count III, the Section 1983 state-created danger claim, for failure to state a claim. (Doc. # 23 at 18-21). Mr. Bieber, however, has filed a notice of withdrawal of Count III. (Doc. # 26). Although the notice fails to cite any authority that would permit Mr. Bieber to withdraw a single claim, it appears Mr. Bieber intended the notice to serve as a Federal Rule of Civil Procedure 41 notice of voluntary dismissal of that single claim.

But Mr. Bieber cannot withdraw one claim from his second amended complaint under Federal Rule of Civil Procedure 41. "A plaintiff may not use Rule 41(a) to dismiss a single or discrete claim against a single defendant or against all defendants." Baxter v. Santiago-Miranda, 121 F.4th 873, 884 (11th Cir. 2024). "Rule 41(a) does not permit plaintiffs to pick and choose, dismissing only particular claims within an action." Id. (citation and internal quotation marks omitted). "As a result, a Rule 41(a) dismissal of only one of the claims against a defendant or defendants is ineffective and leaves that claim pending in the district court, creating a lack of finality." Id.

Nevertheless, the Court construes Mr. Bieber's notice of withdrawal as consent to the dismissal of this claim. See Id. (noting that a plaintiff may "concede a claim in the district court"). Accordingly, the Motion is granted as to Count III and Count III is dismissed.

### C.    Section 1983 Monell Claim

In Monell v. Department of Social Services of City of New York, the Supreme Court held that a local government can be liable under Section 1983 if a plaintiff shows that his constitutional rights have been violated because of a government's policy or custom. 436 U.S. 658, 694–95 (1978).

12

The Eleventh Circuit has "explained that to seek damages from a local government, a plaintiff must establish (1) that his constitutional rights were violated; (2) that the municipal office had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." Cunningham v. Cobb Cnty., 141 F.4th 1201, 1213 (11th Cir. 2025) (citation and internal quotation marks omitted).

Importantly, a "Monell claim is derivative of — and so requires — an actual constitutional violation by an officer." Id. (citation omitted). "If a plaintiff cannot establish an actual constitutional violation by an officer, the plaintiff's Monell claim fails at step one." Id. "Put differently, when a plaintiff fails to establish an underlying constitutional violation, [courts] can dismiss the plaintiff's claims against the local government (or local government entity) as a matter of law." Id.

Here, Mr. Bieber's Monell claim — as pled in the second amended complaint — is primarily based on the same constitutional violation as that alleged in the state-created danger claim under the Fourteenth Amendment's Due Process Clause. Indeed, he alleges: "The constitutional violation at issue is HCSO's own affirmative use of governmental authority

13

to create a false record of [Detective] Leyden's conduct, conceal his dangerous history, and place Deputy Bieber in a position of enhanced danger." (Doc. # 22 at 42).

Because he has now withdrawn his state-created danger claim in Count III, Mr. Bieber states that his <u>Monell</u> claim no longer "rel[ies] on state-created danger." (Doc. # 30 at 15). Thus, to the extent the <u>Monell</u> claim is based on the same alleged constitutional violation as the state-created danger claim, it is dismissed.

Mr. Bieber also appears to have abandoned the alternate theory pled in the second amended complaint about a failure to train. The second amended complaint alleges: "HCSO's failure to train its personnel to recognize and respond to domestic violence by fellow officers, despite the obvious need for such training given the pattern of murder-suicides . . . constitutes deliberate indifference that caused the violation." (Doc. # 22 at 44). But nowhere in his response regarding the <u>Monell</u> claim does Mr. Bieber mention a failure to train or contend that he has sufficiently alleged a failure to train theory. (Doc. # 30 at 15-18). Thus, he has abandoned this theory.[1] <u>See</u> <u>Barnes v. AstraZeneca Pharms. LP</u>, 253 F.

---

[1] Even if the failure-to-train theory has not been abandoned by Mr. Bieber's failure to address it and his explicit

14

Supp. 3d 1168, 1171 (N.D. Ga. 2017) ("When an argument is raised upon [a] motion to dismiss that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned and subject to dismissal." (citation omitted)).

Instead, Mr. Bieber maintains that his <u>Monell</u> claim is based on a different alleged policy or custom of the HCSO. Specifically, the "HCSO maintained a policy and custom of selectively denying its protective and investigative services to a specific class of victims: women reporting domestic violence by male deputies." (Doc. # 30 at 16); <u>see also</u> (<u>Id.</u> at 2) (asserting the HCSO "systematically dismissed domestic violence complaints made by women against male deputies while processing other misconduct complaints through normal

---

adoption of an Equal Protection theory in his response instead, the <u>Monell</u> claim would still be dismissed under this theory. Mr. Bieber has failed to plausibly allege an underlying violation of Abigail Bieber's constitutional rights (Due Process or Equal Protection). Furthermore, the second amended complaint does not plausibly allege that HCSO's training (or lack thereof) of its officers to "recognize and respond to domestic violence by fellow officers" rises to the level of deliberate indifference. (Doc. # 22 at 44); <u>see</u> <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. . . . [D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." (citations and internal quotation marks omitted)).

15

channels"). Although he acknowledges that the second amended complaint never mentions the Equal Protection Clause of the Fourteenth Amendment or casts Sheriff Chronister's actions as discrimination against women, Mr. Bieber contends such an Equal Protection-based Monell claim is sufficiently pled. (Id. at 15-16).

This argument fails for several reasons. First, the Equal Protection theory is not pled in the second amended complaint. The second amended complaint is clear that it is based on the state-created danger theory and the failure to train theory only. See, e.g., (Doc. # 22 at 42) ("The constitutional violation at issue is HCSO's own affirmative use of governmental authority to create a false record of [Detective] Leyden's conduct, conceal his dangerous history, and place Deputy Bieber in a position of enhanced danger." (emphasis added)). The second amended complaint does not allege that Sheriff Chronister has instituted a policy or custom of violating Equal Protection rights based on sex by "selectively denying its protective and investigative services" to "women reporting domestic violence by male deputies," as Mr. Bieber now claims in his response. (Doc. # 30 at 16). Mr. Bieber "may not amend his complaint through a response to a motion to dismiss." Watkins v. Six Unknown

16

Broward Sheriff Jail Deputies, No. 14-62095-CIV, 2015 WL 13203924, at *2 (S.D. Fla. Dec. 2, 2015); see also Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). The Monell claim is dismissed for this reason.

Even if the Equal Protection theory were implicit in the second amended complaint, it would still fail. "To plead a selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must proffer sufficient factual allegations to show that: (1) plaintiff was treated differently from other similarly situated individuals, and (2) such differential treatment was based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Lozman v. City of Riviera Beach, 39 F. Supp. 3d 1392, 1411 (S.D. Fla. 2014). The second amended complaint does not state a plausible violation of Abigail Bieber's Equal Protection rights, which is necessary to support a Monell claim. See Cunningham, 141 F.4th at 1213 ("If a plaintiff cannot establish an actual constitutional violation by an officer, the plaintiff's Monell claim fails at step one."). Mr. Bieber

17

insists that the second amended complaint alleges the HCSO's selective denial of "its protective and investigative services to a specific class of victims: *women reporting domestic violence by male deputies*." (Doc. # 30 at 16) (emphasis added). But, according to the second amended complaint, Abigail Bieber did not file a complaint against any deputy, let alone against Detective Leyden for domestic violence. The HCSO could not have failed to investigate Abigail Bieber's non-existent complaint based on Abigail Bieber's sex. Abigail Bieber is not plausibly part of the "specific class of victims" of "women reporting domestic violence by male deputies" whose Equal Protection rights were supposedly violated. (Id.).

Furthermore, any assertion that Sheriff Chronister violated Abigail Bieber's Equal Protection rights by ruling as "unfounded" complaints made by other women against Detective Leyden years before her murder fails. Such assertion is merely a restatement of the unavailing state-created danger theory. This failure to plausibly allege an underlying constitutional violation alternatively requires dismissal of the Monell claim.

Finally, even if the second amended complaint's allegations stated a plausible violation of Abigail Bieber's

18

constitutional rights, the second amended complaint fails to plausibly allege a policy or custom of Equal Protection violations. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Christmas v. Harris Cnty., 51 F.4th 1348, 1356 (11th Cir. 2022) (citation omitted). "A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." Id. (citation omitted). "Demonstrating a policy or custom requires showing a persistent and wide-spread practice." Id. (citation omitted).

The second amended complaint alleges only two investigations of complaints against deputies: the two involving Detective Leyden years before he murdered Abigail Bieber. (Doc. # 22 at 18-21). While the complaint by Ms. Ratner was related to domestic violence, there is no allegation that Ms. Flanning was a romantic partner of Detective Leyden or that her complaint was otherwise about a domestic incident. (Id. at 21). Thus, only one complaint against Detective Leyden was plausibly alleged to be a domestic violence complaint. There are also no plausible allegations about Sheriff Chronister ignoring or writing off

19

complaints of domestic violence lodged against other male deputies. While the second amended complaint notes two prior murder-suicides by other HCSO deputies, it does not allege that Sheriff Chronister ignored or held unfounded any domestic violence complaints made against these deputies. (Id. at 22-23). Nor are there allegations of domestic violence complaints filed by men that Sheriff Chronister investigated more seriously than those filed by women. These allegations are insufficient to support the existence of an official policy or a "practice that is applied consistently enough to have the same effect as a policy with the force of law" that disparately treated women reporting domestic violence by deputies. Christmas, 51 F.4th at 1356.

In the event the Court dismisses the Monell claim, Mr. Bieber requests leave to amend his second amended complaint to strengthen the Monell claim. (Doc. # 30 at 18-20). "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." Rosenberg v. Gould, 554 F.3d 962, 967 (11th Cir. 2009) (citation omitted); see also Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion. The motion must: (A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds

20

for seeking the order; and (C) state the relief sought."). This request is procedurally improper and is therefore denied.

Furthermore, the Court would not allow amendment under the circumstances even if a proper motion had been filed. See Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be 'freely given.'"). The second amended complaint is Mr. Bieber's third attempt to plead his claims. Sheriff Chronister raised the same arguments about the viability of the state-created danger theory and the Monell claim in his two earlier motions to dismiss (Doc. # 6 at 10-13; Doc. # 18 at 18-23), but Mr. Bieber failed to draft his second amended complaint to include an Equal Protection theory.

Even if the Court were to ignore this failure to correct through earlier amendments, nothing in the second amended complaint or Mr. Bieber's response suggests that he could plausibly state a Monell claim based on his newly asserted

21

Equal Protection theory. Again, Mr. Bieber has failed to plausibly allege any underlying violation of Abigail Bieber's constitutional rights. He would be unable to do so based on the facts alleged in the second amended complaint. He proposes to amend the second amended complaint to "explicitly allege that [Sheriff Chronister] maintained a policy, custom, or practice of discriminating on the basis of sex by selectively denying protective and investigative services to *female victims reporting domestic violence perpetrated by male deputies*." (Doc. # 30 at 19) (emphasis added). But the second amended complaint does not allege that Abigail Bieber reported domestic violence by Detective Leyden, so she is not a member of the group whose Equal Protection rights were supposedly violated. The second amended complaint also does not identify instances when the HCSO dismissed domestic violence complaints against officers other than Detective Leyden or instances when the HCSO took men's domestic violence complaints against deputies more seriously than those filed by women. The response does not identify any additional facts Mr. Bieber wishes to include in a third amended complaint that could strengthen this claim. On the contrary, he asserts that the third amended complaint would rely on "the existing factual allegations" and would not "alter[] the underlying

22

factual timeline." (Id.). Thus, amendment of this claim would be futile.

The Court dismisses Count IV, the Section 1983 Monell claim.

### D.    Remand of State Claims

Because the Court has dismissed the Section 1983 claims, only state law claims for wrongful death and fraudulent concealment remain pending. Both the Supreme Court and the Eleventh Circuit have "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Therefore, the Court declines to exercise supplemental jurisdiction over the state law claims. See Gibson v. York, 569 F. App'x 810, 813 (11th Cir. 2014) ("[B]ecause her only federal claim was dismissed prior to trial, the district court

was correct to decline to exercise supplemental jurisdiction over Gibson's state legal malpractice claims."). "Comity weighs in favor of remand in this case because all of [Mr. Bieber's] state law claims depend on determinations of state law and state courts, not federal courts, 'should be the final arbiters of state law.'" McCool v. Austal USA, LLC, No. CA 22-00170-KD-MU, 2022 WL 4373611, at *6 (S.D. Ala. Aug. 16, 2022) (citation omitted), report and recommendation adopted, No. CV 22-00170-KD-MU, 2022 WL 4372358 (S.D. Ala. Sept. 21, 2022). As the case was removed to this Court, the Court remands this case to state court for resolution of the state law claims. See Myers v. Cent. Fla. Invs., Inc., 592 F.3d 1201, 1226 (11th Cir. 2010) ("[F]ederal district courts in removal cases must remand, rather than dismiss, state claims over which they decline to exercise supplemental jurisdiction.").

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Sheriff Chad Chronister's Motion to Dismiss (Doc. # 23) is **GRANTED** in part and **DENIED** in part. The Section 1983 claims are dismissed for failure to state a claim.

24

(2)    The Court remands this case to state court so that the state court can address the state law claims that remain.

(3)    The Clerk is directed to remand this case to state court and, thereafter, **CLOSE** this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 11th day of May, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE